WIGHT et al. v. BELL.  (No. 2193.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 19, 1920. Rehearing Denied Jan. 22, 1920.)

1. TRIAL ☜260(1)—REPETITION OF INSTRUCTIONS UNNECESSARY.

Refusal to give special charge substantially embraced in the court's charge was not error.

2. MASTER AND SERVANT ☜278(7)—FINDING OF NEGLIGENCE CAUSING DERAILMENT WARRANTED BY PROOF.

In an action by a locomotive engineer for injuries in a derailment on a newly made road-

bed, evidence *held* to support a finding of negligence by the jury.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by R. A. Bell against Pearl Wight, receiver and others. Judgment for plaintiff, and defendants appeal. Affirmed.

The appellee was a locomotive engineer operating the regular passenger train on the Texas & Pacific Railway from Marshall, Tex., to Boyce, La. The passenger train was approaching Shreveport, La., at 5 o'clock a. m. on January 24, 1918, when the engine suddenly derailed, causing appellee to be severely injured. The appellee sued for damages, claiming that the derailment was caused by negligence by reason of (1) the insufficient roadbed and support under the rails, and (2) the ties in the track not having sufficient ballast under them. The defendant answered by general denial, and pleaded that the derailment was an accident and was not occasioned by negligence, but was one of the ordinary risks assumed by the plaintiff in his employment. The jury rendered a verdict in favor of the plaintiff. At Shreveport, La., the track runs north and south, and the Kansas City Southern Railway crosses it at right angles, or east and west. The union passenger station at Shreveport, La., is on the main line of the Kansas City Southern Railway. The Texas & Pacific Railway train goes in on the Kansas City Southern on a "Y," which is a track of about 18 degrees curve, and then backs into the union station on the Kansas City Southern track. On this connecting track of the Texas & Pacific Railway, and just about the apex of the curve, the engine was derailed. The train was going at a speed of about six or seven miles an hour at the time of the derailment. The evidence showed that on the day before the derailment the trackmen changed the particular piece of track in question some three feet outward from where it was formerly located on the ground. The dump or embankment under the new track was mostly made five or six months before this date. There was a newly made dump or embankment. The situation is clearly explained in the evidence of the section foreman:

"The dump was made to extend towards the ditch some time before the wreck, and then we made the change in the track a day or two before the wreck. When we changed the track, we moved it a foot over on the part of the dump that had been newly made, and then raised it five or six inches and made the outside the proper elevation. Ballast was put there, and then cinders tamped under the ties."

Cinders had been tamped under the ties, but no cinders or dirt was put in between. There is evidence that the track reached to about the edge of the new embankment and

in some places not quite to it. The right-hand side of the track is out on level ground, but there is a ditch on the left-hand side, and the engine ran off on the left-hand side and turned over in the ditch. The trackmen had been working on the track all day until 6 o'clock of the evening before the derailment, and while not entirely had practically finished the work of changing the track. No slow order or notice was given of the condition of the track to the operatives of the train in question. After the trackmen quit in the afternoon, and before the derailment, three or four trains passed over this same track without any accident happening to them. The appellee was 63 years old and had been in the employ of the Texas & Pacific Railway company for a long time prior to the appointment of the present receivers, and remained as locomotive engineer when the government took charge of the road on December 31, 1917. There is involved in the verdict of the jury the finding of fact that the defendant was guilty of negligence as alleged proximately causing the injury to appellee. It is concluded that the verdict of the jury has support in the evidence and should be sustained and here adopted. The finding of the jury as to the amount of damages is sustained by the evidence, and is here adopted.

Prendergast & Prendergast and Hall, Brown & Hall, all of Marshall, for appellants.

S. P. Jones and J. T. Casey, both of Marshall, for appellee.

LEVY, J. (after stating the facts as above). [1] As the substance of the special charge complained of in the first assignment of error is, we think, fully covered by the court's general charge in the ninth paragraph, the assignment, we conclude, should be overruled.

The special charge complained of in the second assignment of error is substantially embraced in the fourth paragraph of the court's charge, and the refusal to give this special charge is not, we think, error.

The third assignment of error charges that the verdict of the jury is excessive in amount. It is believed that the finding of the jury should not be set aside in this respect, in view of the injury, since the assessment of the amount by the jury is supported by the evidence before them.

[2] The fourth, fifth, and sixth assignments of error are based on the contentions that the evidence does not show any negligence on the part of the defendant, and that the plaintiff failed to make legal proof of the negligence alleged. While it appears from the evidence that the roadbed was constructed some five or six months before the track or rails were placed upon it, and that it was constructed of good, solid dirt, yet the reasonable safety of such roadbed so constructed is not conclusive as a matter of law. And it must be further considered as a circumstance in the case that there was a new dump or roadbed made the day the track or rails were laid, and the further fact must be considered that the evidence shows that the track or rails and ties were laid the day before the derailment occurred. This relaying of rails and ties required, it appears, some filling in of cinders and dirt under them, the raising of a part of the rails, the tamping of these cinders and dirt, and an alignment of the track. And it further appears as a circumstance that—

After the rails were placed on the roadbed, "after we throwed the embankment over, we threw it further to the outside of the curve. The track came about to the edge of the new embankment; some places not to it. I do not remember how it was at the place of the wreck. We throwed the curve all the way from a foot to four feet; most of it was thrown four feet over; throwed a distance to make the curve perfect."

Whether or not the entire work of changing the track and aligning it made the track reasonably safe for use such as an ordinarily prudent person would make it, considering the use it was put to, was, we conclude, a matter of fact essentially for the jury to decide; and it is thought that the evidence is sufficient to support a finding of negligence by the jury. It is true that three or four trains passed safely over the track before the derailment, but that is only a circumstance for the jury to consider. The jury may have concluded, as in their province, that the passing of these trains with their weight on a newly laid track caused the track in its then condition and according to its construction to be materially weakened or in some weak condition for the passenger train to pass over it with reasonable safety. There is evidence that the appellee ran his train slowly over the track. The exact cause of the derailment does not positively appear; but the circumstances in evidence tend to support the finding of the jury, as involved in their verdict under the charge of the court, that the cause of the wreck was, as alleged, the insufficient bed and support under the rails, or that the ties did not have sufficient support between them. The case does not rest, we conclude, upon the doctrine of res ipsa loquitur, but there is proof of negligence by direct and circumstantial evidence.

The judgment is affirmed.